**SO ORDERED.**

**SIGNED this 27 day of July, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

JOHN and MICHELLE KRAWCZYK,             CASE NO. 11-09596-8-JRL
                                        CHAPTER 7
　　　　DEBTOR.

### ORDER

This matter came before the court on the Bankruptcy Administrator's ("BA") motion to dismiss the debtors' case pursuant to 11 U.S.C. § 707(a), (b)(1), and (b)(3). A hearing was held on July 9, 2012 in Raleigh, North Carolina.

The debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 20, 2011. Along with the petition, the debtors filed their schedules, official form B22A-chapter 7 statement of current monthly income and means test ("form B22A") which indicated that a presumption of abuse did not arise in the debtors' case. Upon reviewing all the materials filed by the debtors, the BA filed a statement of presumed abuse. The statement was timely docketed on January 30, 2012.

The debtors' schedules state that they have $1,009,241.90 of secured debts, $0.00 of priority unsecured debts and $233,435.99 of non-priority unsecured debts. The debtors' debts

are primarily consumer debts. The debtors' schedule I indicates that the male debtor receives gross monthly wages of $8,250.00 and the female debtor receives gross monthly wages of $2,200.00. After payroll deductions, the male debtor's net monthly take home pay is $5,957.01, and the female debtor's net monthly take home pay is $1,807.36. The debtors' combined average monthly income is $8,294.37. The schedule also indicates that the female debtor's "income is variable and not guaranteed" and the male debtor "can get bonus pay." On their form B22A, the male debtor indicates that his current monthly income ("CMI"), as defined in 11 U.S.C. § 101(10A), is $12,125.83, and the female debtor's CMI is $2,875.27. The debtors' combined CMI is $15,001.00 per month and $180,013.20, annualized.

On line 42, the debtors deduct the following as secured debt payments:

| Name of Creditor | Property Securing the Debt | Average Monthly Payment |
| --- | --- | --- |
| Bank of America | 11157 Turnbridge Drive, Jacksonville, Florida | $1,117.00 |
| Flagstar Bank | 11157 Turnbridge Drive, Jacksonville, Florida | $3,464.00 |
| Branch Bank & Trust Co. | 10155 Hunters Chase Court, Jacksonville, Florida | $2,219.43 |
| Branch Bank & Trust Co. | 85 Grandview Peaks, Nebo, North Carolina | $400.00 |
| Branch Bank & Trust Mortgage | 85 Grandview Peaks, Nebo, North Carolina | $2,118.00 |

The statement of intention, filed with the schedules, indicates that the debtors intend to surrender

the three pieces of real property securing these debts.[1] The debtors have not made a payment on these debts since 2010.

The debtors have four dependent children ranging in ages from two to thirteen. One of the debtors' minor daughters was born with a rare illness. Since birth, the child has had nine life threatening episodes of anaphylaxis. The child typically has three to five reactions a day, triggered by extreme conditions, where she needs rescue medicines. Therefore, the child is in need of constant twenty-four hour care. As a result, the female debtor is unable to seek employment outside the home. The female debtor testified that she currently earns income from two jobs that allow her to work, when she is able, from home. The female debtor also testified that the illness has left the debtors faced with significant medical expenses.

The male debtor has been employed as a general manager with Allied Building Products Corporation ("Allied") for approximately one year. Before taking this job, the male debtor worked in Florida. The debtors moved to North Carolina due to their daughter's illness, as she was in need of a more moderate climate. Since approximately 2007 to the present, the male debtor's income has decreased by 87.7%. Allied primarily works on government building projects. The male debtor testified that the 2011 year was a "red herring year" since Allied was involved in a higher than average number of large governmental construction projects. The 2011 work season resulted in the debtor receiving a large bonus that he does not anticipate he will receive in the future. He also testified that at this point, it is uncertain what his future bonus will equal.

---

[1] At the hearing, the debtors testified that the property they owned at 10155 Hunters Chase Court, Jacksonville, Florida, has already been foreclosed upon.

## DISCUSSION

The BA contends that the debtors' case should be dismissed pursuant to 11 U.S.C. § 707(b)(1). Specifically, the BA argues that the debtors have improperly calculated their means test as it relates to line 42, and once corrected, the case would be a presumed abuse. The debtors concede that if the secured debt payments are taken out of their means test calculation the presumption of abuse would arise in the debtors' case. In the alternative, the BA argues this case should be dismissed based on the totality of the circumstances pursuant to 11 U.S.C. § 707(b)(3). At the hearing, the BA conceded there were no grounds for dismissal pursuant to 11 U.S.C. § 707(a). For the reasons that follow, the court finds that the debtors' case will be dismissed for abuse pursuant to § 707(b)(1), but not on § 707(b)(3) grounds.

Pursuant to § 707(b)(3), the BA contends the debtors' high income leaves them with an ability to pay their daughter's medical expenses and their unsecured creditors. The debtors argue that § 707(b)(3) requires a showing of more than an ability to pay.

"Although the debtor's ability to pay his creditors is certainly a factor contributing to the court's finding of abuse, the court's decision is not based on that factor alone." In re Coyle, Case No. 10-03476-8-SWH, 2011 WL 5902739, at *4 (Bankr. E.D.N.C. Jun. 29, 2011). Section 707(b)(3) permits the court to dismiss a chapter 7 debtor's case for abuse if the debtor has filed in bad faith, or, based on the totality of the circumstances, the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3). The Fourth Circuit, in considering whether abuse existed, adopted a "totality of the circumstances" test, consisting of the following factors:

>  (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> 
>  (2) Whether the debtor incurred cash advances and made consumer

    purchases far in excess of his ability to repay;

    (3) Whether the debtor's proposed family budget is excessive or unreasonable;

    (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

    (5) Whether the petition was filed in good faith.

See In re Green, 934 F.2d 568, 572 (4th Cir. 1991).  The court notes that the Green case was decided prior to § 707(b)(3) being amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, § 907 (April 20, 2005) ("BAPCPA").  However, the Fourth Circuit's decision in Green remains instructive for courts determining whether a case should be dismissed under § 707(b)(3).  See Calhoun v. U.S. Tr., 650 F.3d 338, 341 (4th Cir. 2011) (finding the totality of the circumstances analysis still applicable in determining whether abuse is present under § 707(b)(3), and identifying the Green factors in this regard); see also In re Coyle, 2011 WL 5902739, at *2 ("Although the statute has been modified by BAPCPA, pre-BAPCPA cases such as Green remain instructive to the § 707(b)(3) analysis.").

    The court finds that the first Green factor weighs in favor of the debtors.  The debtors' bankruptcy filing was brought about by their daughter's illness.  Due to North Carolina's more moderate climate, the debtors relocated from Florida.  The debtors were thus no longer able to reside in their Florida residence and the male debtor had to take a new job.  Also, their child's health situation certainly may impact the female debtor's future earning ability.

    As for the remaining Green factors, the court finds that the debtors' schedule F is modest.  Most of the debts were not incurred on the eve of their bankruptcy filing, but during a time that the debtors thought they would be able to repay.  The court also finds credible the testimony of

the debtors that their expenditures are reasonable and consistent with reducing their expenses in every way that is feasible.  Unfortunately, the debtors face a very difficult and unknowable set of expenses due to the illness of one particular child.  Finally, the male debtor's future bonuses, at this point, are too uncertain for the court to make a finding that the male debtor has an ability to pay.  Therefore, the BA's motion to dismiss pursuant to 11 U.S.C. § 707(b)(3) is DENIED.

Pursuant to 11 U.S.C. § 707(b)(1), if the court determines that granting an individual chapter 7 debtor relief would be an abuse of the provisions of chapter 7 then the court may dismiss the case or, with the consent of the debtor, convert the case to one under chapter 11 or 13.  11 U.S.C. § 707(b)(1).  In determining whether granting the debtor relief would be an abuse, "a court should presume an abuse if the debtor's current monthly income reduced by certain amounts and multiplied by 60 is not less than the lesser of 25 percent of the debtor's nonpriority unsecured claims or $7,025, whichever is greater; or $11,725."  See In re Sterrenberg, 471 B.R. 131, 132 (Bankr. E.D.N.C. 2012) (citing 11 U.S.C. § 707(b)(2)(A)(I)).

The BA argues that the debtors' deductions taken on line 42 should be disallowed since the debtor intends to surrender the collateral securing these debts .  Thus, the debtors will not be making any future payments on the debts.  The debtors contend that the plain language of the statute allows them to deduct the secured debt payments, despite their intention to surrender the collateral securing the debts.

In Lynch v. Haenke, 395 B.R. 346 (E.D.N.C. 2008), a chapter 7 debtor indicated on her form B22A that she would be making future secured debt payments secured by her ownership interest in a Michigan Residence.  On her statement of intention, she indicated that she would be surrendering the Michigan Residence.  The court held that in calculating the debtor's means test,

6

the debtor was permitted to deduct her secured mortgage payment despite the debtor's stated intention to surrender the collateral securing the debt.  The district court based its ruling on the "plain, ordinary reading" of § 707(b)(2)(A)(iii).  See Haenke, 395 B.R. at 349 ("Congress did not tailor the subsection at issue so as to apply only to payments estimated to be actually paid.  Instead, a plain, ordinary reading of the subsection supports the bankruptcy court's finding that it applies to payments that the debtor is under contract to make.").  The district court's analysis turned on the contractual obligations the debtor was required to pay on the date she filed her bankruptcy petition.  Thus, because the debtor was contractually obligated to pay her mortgage on the petition date she was permitted to deduct the secured mortgage payment despite her intention to surrender the collateral securing the debt.

Recent Supreme Court and Fourth Circuit precedent have called the Haenke court's reasoning into question.  See Hamilton v. Lanning, __ U.S. __, 130 S. Ct. 2464, 2478 (2010) ("Consistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."); see also Ransom v. FIA Card Services, N.A., __ U.S. __, 131 S. Ct. 716, 725 (2011) (". . . a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category.  If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute."); see also In re Quigley, 673 F.3d 269, 274 (4th Cir. 2012) ("We therefore conclude that the bankruptcy court erred in ruling that the determination of the Debtor's projected disposable income would not take into account the Debtor's intention to surrender the ATVs.").  These

7

cases all involved chapter 13 debtors. The issue becomes whether the reasoning used in these cases is applicable in the context of a chapter 7 debtor.

This district recently addressed, as a matter of first impression after the more recent line of cases, the issue of whether a chapter 7 debtor may claim a line 42 deduction, for payments that the debtor does not intend to pay, secured by collateral that the debtor does not intend to retain. See In re Sterrenberg, 471 B.R. 131 (Bankr. E.D.N.C. 2012). The court ultimately held, "[t]o allow the Debtor to take these secured payment deductions would be absurd and diametrically in opposition to the policy goals of the means test" espoused by the Supreme Court in Ransom. Id. at 136. The court also noted that in addition to the Ransom decision, Hamilton v. Lanning and Morris v. Quigley provide clear guidance. Id. at 135.

> Taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future. Applying this reasoning furthers the purpose of the means test, which was intended to ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.

Id. (internal quotation marks omitted).

It is clear that the Supreme Court and Fourth Circuit have suggested that despite the language of the statute, courts are to look at what is actually happening in these transactions and calculate deductions based on the debtor's actual expenses. Essentially, the more recent line of case law prohibits a debtor from deducting phantom expenses to shelter income.

Here, the debtors tried to take a $12,000.00 line 42 deduction on debts they have not made a payment on since 2010 and never intend to make again. The debtors concede that if the secured debt payments are taken out the presumption of abuse would clearly arise under § 707(b)(1) and they would not be able to proceed under special circumstances. When the secured

debt payments are taken out of the means test calculation the debtors' are left with a positive $5,900.00 in disposable income, and a positive sixty month personal income of roughly $354,000.00.

Based on the foregoing, the BA's motion to dismiss the debtors' case for abuse under § 707(b)(1) is **ALLOWED**.  The debtors have twenty days to decide whether to convert to case under a chapter 13.

**END OF DOCUMENT**