IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-643-FL

| | |
|---|---|
| JOHN GEORGE KRAWCZYK and MICHELLE MARIE KRAWCZYK ) ) ) Appellants, ) ) v. ) ) MARJORIE K. LYNCH, Bankruptcy ) Administrator, ) ) Appellee. ) | ORDER |

This matter comes before the court on appeal by debtors John and Michelle Krawczyk ("appellants"), from an order of the bankruptcy court entered July 27, 2012, granting the motion to dismiss of Bankruptcy Administrator, Marjorie K. Lynch ("appellee"), based on a presumption of abuse pursuant to 11 U.S.C. § 707(b). The matter is fully briefed and the issues presented are ripe for ruling.[1]

**BACKGROUND**

On December 20, 2011, appellants filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In connection with the petition, appellants filed schedules and statements, which included itemizations of assets, liabilities, income, and expenditures. In pertinent part, appellants identified (1) an ownership interest in three properties (Schedule A), (2) five separate secured debts

---

[1] Although appellee requested oral argument in advance of the court's ruling, the court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

relating to these three properties (Schedule D), (3) no current or projected monthly expenses related to secured debt payments on these three properties (Schedule J), (3) and a "means test" calculation, (Form B22A), listing deductions from current monthly income for future payments on secured claims related to these three properties. (See Schedules and Statements dated 12/28/2011 at 9, 15-16, 25-26, 40 (DE 2-5)). At the same time, appellants filed a statement of intention to surrender their interest in these three properties. (Id. at 31-33).

On February 29, 2012, appellee filed a motion to dismiss, arguing that deductions from current monthly income for secured debt payments in the means test calculation were improper because they related to property appellants intended to surrender.  Removing the improper deductions, appellee argued, would result in the means test calculating 60 month disposable income of positive $354,554.40, instead of negative $204,551.40, as asserted by debtors, thus triggering a presumption of abuse under the bankruptcy code.  Appellants filed a memorandum of law in opposition to the motion to dismiss, arguing, as they do on appeal, that the means test allows Chapter 7 debtors to deduct secured debt payment on properties that they intend to surrender. Accordingly, appellants argued, the means test calculation resulting in disposable income of negative $204,551.40 was proper, and no presumption of abuse is triggered.

On July 9, 2012, the bankruptcy court held a hearing on appellee's motion to dismiss. During the hearing, appellants confirmed that their Schedule J includes no expense related to secured debt payments on their real property.  (Hr'g Tr. 26).  Appellants also confirmed that they had no intention to keep their real property, and they had not made any secured debt payments on their real property since August, 2010. (Id. 17-23).  In addition, one of the properties was foreclosed upon prior to the bankruptcy filing.  (Id. 22-23).

On July 27, 2012, the bankruptcy court entered an order granting appellee's motion to dismiss. In pertinent part, the court concluded that appellants improperly listed deductions for secured debt payments where appellants had not made payments on their real property since 2010 and do not intend to make payments again. See In re Krawczyk, No. 11-0956-8-JRL, 2012 WL 3069437 * 5 (E.D.N.C. Bankr. July 27, 2012). While the bankruptcy court recognized that this court previously had interpreted the means test to allow an expense deduction where a debtor intends to surrender collateral, the bankruptcy court noted that recent Supreme Court and Fourth Circuit cases now shed new light on the issues raised. Id. at *4. The bankruptcy court also found persuasive a more recent decision of the bankruptcy court, analyzing the recent Supreme Court and Fourth Circuit precedent. Id. On August 21, 2012, the bankruptcy court granted appellants' motion for stay of the dismissal order pending this appeal.

## DISCUSSION

### I. Standard of Review

The court reviews "legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error." In re Quigley, 673 F.3d 269, 271 (4th Cir. 2012). Appellants acknowledge that the "facts in this case are not in dispute," and that "[e]ach of the issues on appeal are questions of law and are, therefore, subject to de novo review" by this court. (Appellants' Mem. at 4).

### II. Analysis

Under 11 U.S.C. § 707(b), the bankruptcy court may dismiss a Chapter 7 bankruptcy case, or convert it to a Chapter 13 case with the debtor's consent, "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). In considering whether

granting of relief would be an abuse of Chapter 7 provisions, "the court shall presume abuse exists" if the debtor's "current monthly income" exceeds a statutory minimum amount, under a mathematical formula in the statute known as the "means test." § 707(b)(2)(A); Ransom v. FIA Card Services, N.A., 131 S.Ct. 716, 721 (2011). The means test requires the court to deduct specified categories of expenses as set forth in the statute from the debtor's current monthly income. See id. As pertinent here, the means test provides a deduction for "[t]he debtor's average monthly payments on account of secured debts," which "shall be calculated as . . . the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition. . . . divided by 60." 11 U.S.C. § 707(b)(2)(A)(iii).

The issue in this case is whether appellants are entitled to a deduction for "average monthly payments on account of secured debts" where appellants intend to surrender the collateral securing the debt and appellants did not make for ten months, and will not make again in the future, any payments on the debt. Appellants argue that the deduction applies by virtue of the language of the means test, the purposes underlying the means test, and policy considerations, regardless of the debtors' stated intention to surrender the collateral and never make payments again. (See Appellants' Br. at 6-11). Appellee argues that the bankruptcy court properly determined appellants were not entitled to the deduction, in light of recent Fourth Circuit and Supreme Court law shedding light on the proper interpretation of the means test. (See Appellee's Br. at 12-19).

The court recognizes that the issue presented on appeal has been encountered by this court before, and that there is a sharp division of authority between courts that have allowed the deduction

despite a debtor's stated intention to surrender collateral, and those that have not.[2] Following recent Supreme Court and Fourth Circuit cases, however, which were decided after this court's earlier ruling on this issue, the court finds reason to revisit application of the deduction under the circumstances presented here.

The court's "interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." Ransom, 131 S.Ct. at 723 (quotations omitted). "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). Where, by contrast, the statute "lends itself to more than one reasonable interpretation, and thus does not have a 'plain' meaning," the court must look to other factors bearing on the meaning of the text. In re Maharaj, 681 F.3d 558, 568-70 (4th Cir. 2012). The court must "find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." Comm'r of Internal Rev. v. Engle, 464 U.S. 206, 217 (1984).

For example, in In re Maharaj, the Fourth Circuit recently addressed the interpretation of two provisions in the Bankruptcy Code, §§ 1115 and § 1129(b)(2)(B)(ii), as amended by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCA), related to property included in the bankruptcy estate. Noting that "the courts that have considered this issue have arrived at plausible, competing arguments as to why their respective approaches are consistent with Congressional purpose in enacting BAPCPA," the court first held that the language at issue was

---

[2] Compare, for example, In re Rivers, 466 B.R. 558 (Bankr. M.D. Fla. 2012) (allowing deduction); Lynch v. Haenke, 395 B.R. 346 (E.D.N.C. 2008) (same, collecting caes), with In re Sterrenberg, 471 B.R. 131 (Bankr. E.D.N.C. 2012) (not allowing deduction, collecting cases); In re Fredman, 471 B.R. 540 (Bankr. S.D. Ill. 2012) (same).

ambiguous because it was susceptible to more than one reasonable interpretation. Mahraj, 681 F.3d at 569. The court then looked "to the specific context in which that language is used, and the broader context of the statute as a whole," as well as canons of statutory construction, and the purpose of the statute, in determining the proper interpretation of the statutory text. See Mahraj, 681 F.3d at 570-575.

The provision at issue in this case, which also resulted from BAPCA amendments, is ambiguous in several respects. First, the term "scheduled" is susceptible to more than one reasonable interpretation with respect to the circumstances presented in this case. On the one hand, it can be interpreted, as some courts have along with appellants here, to mean that payments are specified to be paid under a loan contract. See Lynch, 395 B.R. at 349 (collecting cases); see also Appellants' Br. at 9-10. In this respect, payments on secured debts are "scheduled" because they are contractually due. See id. On the other hand, "scheduled" can be interpreted, as some courts have, to require reference to the bankruptcy schedules and statements upon which debtors list their financial affairs. See Sterrenberg, 471 B.R. at 133-34 (collecting cases); see, e.g., In re Fredman, 471 B.R. 540, 551 (Bankr. S.D.Ill. 2012). For example, in this case, appellants list on Schedule J an estimate of monthly expenses which includes no payments on secured debts. See Schedules and Statements dated 12/28/2011 at 25 (DE 2-5); Hr'g Tr. 26. In this respect, payments on secured debts are not "scheduled" because they are not included among the Schedule J estimate of monthly expenses and appellants have filed a statement of intent to surrender the collateral.

An additional ambiguity arises because of the requirement that payments be "on account of secured debts" and that amounts be due to "secured creditors." These terms can be interpreted, as some courts have, to refer to the type of debt existing at the time of the filing of the petition. See

e.g., In re Walker, 05-15010-WHD, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006). In this respect, even if the debts may at some point change character because of surrender of collateral or foreclosure, their status at time of filing determines applicability of the deduction. By contrast, these terms can be interpreted, as some courts have, to mean that the amounts claimed must be for debts that will remain secured by collateral following the date of filing. See e.g., In re Lipford, 397 B.R. 320, 337 (Bankr. M.D.N.C. 2008); In re Harris, 353 B.R. 304, 309 (E.D. Okla. 2006). Thus, after debtors surrender the collateral underlying the debt, or after a foreclosure has taken place, the debts will not remain secured debts, even though they may remain contractually due. See id.

Another way to describe the ambiguity in the language of § 707(b)(2)(A)(iii) concerns whether the provision involves a "forward-looking" calculation, taking into account changes taking place after the filing of the petition, or a "snapshot" of the debtor's financial state as of the date of the petition. See Sterrenberg, 471 B.R. at 134 (collecting cases); Lynch, 395 B.R. at 348-49 (collecting cases). Under the snapshot view, the amount of payments claimed is dependent not on what the debtor intends to pay but solely on what payments are specified in the loan contract at the time of the date of filing. The forward-looking interpretation, by contrast, takes into account the debtor's stated intentions and whether the debtor will have expenses on account of secured debts in the "60 months following the date of the filing of the petition." § 707(b)(2)(A)(iii). In this respect, if a debtor is not making secured debt payments, and does not intend to make any secured debt payments in any of the 60 months following filing, then there are no "payments" upon which to make an average monthly payment calculation.

Given that § 707(b)(2)(A)(iii) is susceptible to differing interpretations, the court's next task is to determine which interpretation to adopt. Mahraj, 681 F.3d at 569. This process is simplified

7

in this case because the Fourth Circuit has already applied the provision in accordance with the forward-looking interpretation. In particular, the Fourth Circuit, in In re Quigley, 673 F.3d 269 (4th Cir. 2012), applied § 707(b)(2)(A)(iii) in the context of approval of a Chapter 13 reorganization plan, which requires payment of "projected disposable income" to unsecured creditors, less certain amounts qualifying as expense deductions under the Chapter 7 means test. Quigley, 673 F.3d at 272 (quoting 11 U.S.C. § 1325(b)). The deduction at issue in Quigley was, as in this case, the § 707(b)(2)(A)(iii) deduction for "average monthly payments on account of secured debts." Quigley, 673 F.3d at 272 (quoting § 707(b)(2)(A)(iii)). The court held that in the context of determining "projected disposable income" for a Chapter 13 plan, the debtor could not deduct under § 707(b)(2)(A)(iii) payments for secured debts that the debtor knew she would not be making because of her stated intent to surrender the vehicles securing the debts. Quigley, 673 F.3d at 273.

Given that the Fourth Circuit did not permit application of the § 707(b)(2)(A)(iii) deduction where the debtor intended to surrender the collateral securing the debts, the court is constrained here to interpret the same provision, albeit in a different context, consistently. If § 707(b)(2)(A)(iii) did not apply in Quigley, even though secured debt payments were contractually due, then they also do not apply in this case, even though appellants' payments are contractually due here.

In Quigley, the Fourth Circuit discussed two Supreme Court cases that provided further support for its decision, Hamilton v. Lanning, 130 S. Ct. 2464 (2010), and Ransom v. FIA Card Services, N.A., 131 S.Ct. 716 (2011), which also shed further light on the proper interpretation of the statute here. In Lanning, the Supreme Court held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." 130 S.Ct. at 2478. In

8

Ransom, the Supreme Court held that a debtor who does not make loan or lease payments may not take a car-ownership deduction available under the means test provision for "applicable monthly expense amounts." 131 S.Ct. at 724 & 730.

Of particular relevance here, Ransom confirmed that "[b]ecause Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category." 130 S.Ct. at 725. Likewise, "[r]equiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances BAPCPA's objectives." Id. The Supreme Court's confirmation that a debtor should be required to qualify for a deduction by actually incurring an expense under the means test further supports the forward-looking interpretation of § 707(b)(2)(A)(iii).

Appellants suggest that Quigley, Lanning, and Ransom are inapposite because these cases involved application of the means test in Chapter 13 proceedings as opposed to Chapter 7 proceedings, and the means test in Chapter 7 cases serves a different function from the means test in Chapter 13 cases. (Appellants' Br. at 8-9). The court finds this argument unpersuasive, however, because the provisions that comprise the means test in Chapter 13 proceedings are the same provisions that comprise the means test in Chapter 7 cases. See 11 U.S.C. § 1325(b)(3). As noted in Ransom, "Chapter 13 borrows the means test from Chapter 7." 131 S.Ct. at 721 n.1. Likewise, as stated in Quigley, the Chapter 13 inquiry into "amounts reasonably necessary to be expended" are "determined by reference to the Chapter 7 'Means Test.'" 673 F.3d at 272 (citing 11 U.S.C. § 707(b)(2), 1325(b)(3)).

Furthermore, Quigley applied the same § 707(b)(2)(A)(iii) expense deduction at issue here, and Ransom applied one of the other expense deductions that is also present in the Chapter 7 means

test.  Indeed, the Supreme Court in Ransom, "granted a writ of certiorari to resolve a split of authority" over the application of the means test expense deduction for vehicle-ownership costs. Ransom, 131 S.Ct. at 723.  Notably, the Supreme Court identified four circuit court cases included in the split of authority, see id. at 723 n. 4, two of which involved Chapter 7 debtors, In re Tate, 571 F.3d 423, 424 (5th Cir. 2009) and In re Ross-Tousey, 549 F.3d 1148, 1162 (7th Cir. 2008).

Thus, while appellants suggest that the same provisions should be applied differently depending on whether the case arises under Chapter 7 or Chapter 13, this suggestion runs contrary to the "standard principle of statutory interpretation [that] provides that identical words and phrases within the same statute should normally be given the same meaning." Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 232 (2007).  As a result, even though the Fourth Circuit applied § 707(b)(2)(A)(iii) in the context of a Chapter 13 proceeding, the language of the provision is the same in a Chapter 7 proceeding, and should thus be applied in the same manner.  Similarly, the principles announced in Lanning and Ransom for application of the means test apply equally in Chapter 13 and Chapter 7 cases because the language of the means test is identical in each.

Finally, appellants raise a policy argument in favor of their position, arguing that they should not be penalized for honestly stating their intentions to surrender property. (Appellants' Br. at 10-11).  Appellants point out that under the interpretation adopted by the bankruptcy court, a debtor "could simply indicate their plans to retain the property and perhaps even pay the applicable mortgage for 1-3 months after filing and then promptly stop paying once the chapter 7 discharge was entered." (Id. at 10).

The Supreme Court addressed and rejected similar policy arguments in Ransom and Lanning. In Ransom, the debtors argued that under the court's interpretation "[d]ebtors can time their

10

bankruptcy filing to take place while they still have a few car payments left, thus retaining an ownership deduction which they would lose if they filed just after making their last payment." 131 S.Ct. at 729. In rejecting this argument, the court observed "this kind of oddity is the inevitable result of a standardized formula like the means test," and the court noted that the debtor's "alternative reading of the statute would spawn its own anomalies – even placing to one side the fundamental strangeness of giving a debtor an allowance for loan or lease payments when he has not a penny of loan or lease costs." Id.

The same can be said here. Under appellants' interpretation of the statute, two separate debtors with identical income and expenses would receive different results in Chapter 7. One, who amassed secured debts prior to filing bankruptcy, could claim deductions for secured debt payments that will never actually be paid, and would satisfy the means test and be allowed to proceed in Chapter 7. The other, who amassed no secured debts prior to filing bankruptcy, could claim no deductions and would be required to proceed to Chapter 13 and make payments to unsecured creditors without deductions from income.

Moreover, debtors' hypothetical scenario presumes circumstances that may not be realistic in the context of a Chapter 7 filing. As the facts of this case illustrate, where foreclosure proceedings took place and appellants ceased making all secured debt payments several months before they filed for bankruptcy, it is questionable they would have to been inclined to "pay the applicable mortgage for 1-3 months after filing," in order to take advantage of the secured debts deduction. The Supreme Court addressed a similar hypothetical in Lanning, where it was suggested that a debtor could delay a petition to impact the calculation of income under the means test. The court observed that "delay is often not a viable option for a debtor sliding into bankruptcy," and

11

"even when a debtor is able to delay filing a petition, such delay could be risky if it gives the appearance of bad faith." 130 S.Ct. 2476. Similarly here, Chapter 7 debtors who attempt to circumvent means test requirements through dishonest activity face significant deterrent consequences. 11 U.S.C. § 707(b)(3)(A). Thus, in light of all these considerations, the court finds appellants' policy arguments unavailing.

In sum, where the language of § 707(b)(2)(A)(iii) is ambiguous, the court is compelled to interpret the provision in accordance with Fourth Circuit and Supreme Court interpretations of the means test, such that this expense deduction is not applicable to a debtor who intends to surrender collateral and never intends to make secured debt payments.

## CONCLUSION

Based upon the foregoing, the bankruptcy court's decision allowing appellee's motion to dismiss is AFFIRMED.

SO ORDERED, this the 17th day of June, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge